# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7862 | **DATE** | 7/19/2002 |
| **CASE TITLE** | RALPH FOWLER, et al vs. COLFAX ENVELOPE CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER:  there is no genuine issue of material fact on any of the ADEA claims Fowler asserts against Colfax Envelope, Corp. Defendant's motion for summary judgment against Fowler is therefore granted.  A genuine issue of material fact does exist on the claims Cahill asserts against Colfax Corp.  Defendant's motion for summary judgment against Cahill and Cahill's cross motion for summary judgment are, therefore, denied. Status hearing set for 8/1/02 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | JUL 2 3 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 37 |
| ✓ | Docketing to mail notices. | | SB | | |
| | Mail AO 450 form. | CLERK, U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | 02 JUL 22 PM 4:21 | date mailed notice | | |
| | | FILED-ED 10 | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

RALPH FOWLER and JAMES CAHILL,    )
    )
    Plaintiffs,    )
    )
    v.    )    No. 00 C 7862
    )    Paul E. Plunkett, Senior Judge
COLFAX ENVELOPE CORP.,    )
    )
    Defendant.    )

**DOCKETED**

JUL 2 3 2002

## MEMORANDUM OPINION AND ORDER

Ralph Fowler and James Cahill have sued Colfax Envelope Corp., ("Colfax Corp.") for its alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Colfax Corp. has filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. Cahill, but not Fowler, has filed a cross motion for summary judgment. For the reasons set forth below, the defendant's motion for summary judgment is granted with respect to Fowler and denied with respect to Cahill. Cahill's cross motion for summary judgment is denied.

## Facts

Colfax Corp. is a printing company that manufactures and sells lithographic direct mail and bank envelopes. (Def.'s Stmt. Facts ¶ 4.) In mid-1999, the company employed more than 120 people. (Id.) Twenty-six employees worked in the pressroom, operating and maintaining the presses. (Id.) Twelve of those workers, including Fowler and Cahill, were pressmen, who actually ran the press. (Id. ¶¶ 7, 9.) The remaining pressroom employees were feeders and helpers, who did not have the same degree of training as the pressmen. (Id.).

37

In May 1999 Colfax Corp.'s president, Charles Patten, Jr., decided to purchase a new, web-based press. (Id. ¶ 14.) This decision necessitated significant layoffs in the pressroom since much of the work was automated. (Pls.' Mem. Resp. Mot. Summ. J. at 1.)

In June 1999, the company's senior vice president, Frederick Clanton, asked Earl "Rick" Wilhelm, recently chosen to be the web press's lead pressman, to choose two other pressmen who would work the new press. (Def.'s Stmt. Facts ¶ 42.)[1] Clanton told Wilhelm not to choose Cahill because Cahill would be retiring at the end of the year. (Id.) A week and a half to two weeks later, Wilhelm submitted his recommendations. (Id. ¶ 43.)[2] After the list was completed, Patten asked Clanton if Ron Davenport, Wilhelm's brother-in-law, had been included. (Id. ¶ 45.) His name was not on the list, but Patten and Clanton added him for vacation relief. (Id.)

Plaintiff contends, and we must accept as true, that at a union meeting on June 24, 1999, Clanton told a union representative that Colfax Corp. wanted to "train young guys" to run the new equipment. (Pls.' Stmt. Facts ¶ 12.)

Plaintiff contends, and we must accept as true, that on September 22, 1999, Clanton told Cahill that Patten said he "was going to get rid of everyone over fifty." (Pls.' Stmt. Facts ¶¶ 3-4.)

The layoffs were announced to the employees on October 4, 1999, and effectuated on December 4, 1999. (Pl.'s Compl. ¶ 12.) Cahill, aged sixty, who worked for Colfax Corp. for thirty-three years, and Fowler, aged fifty-two, who was with the company for thirty-two years, were among those let go. (Def.'s Stmt. Facts ¶ 54.)[3] Eight of the original twelve pressmen, all but two of whom

---

[1]Plaintiffs dispute portions of this fact statement, but not the facts cited here.

[2]See n.1.

[3]See n.1.

were over the age of fifty, were laid off. (Id.) Of the four who remained, Wilhelm was fifty years old and Ron Davenport was fifty-seven. (Id. ¶ 53.)[4] The other two retained pressmen were forty-eight and forty-nine years old. (Id.)

## The Legal Standard

A motion for summary judgment will succeed "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). However, "if no reasonable jury could find for the party opposing the motion, it must be granted." Id.

## Discussion

### Jurisdiction

The defendant asserts that Colfax Corp. is entitled to summary judgment because of a blanket arbitration provision in the collective bargaining agreement ("Colfax CBA") covering the plaintiffs' employment. The defendant maintains that the Colfax CBA clearly and unmistakably waives the

---

[4]See n.1.

3

plaintiffs' right to a federal judicial forum, and therefore this Court does not have jurisdiction over the dispute. The plaintiffs contend that a union cannot waive its members' rights to a federal forum by signing a CBA with an arbitration provision. Moreover, plaintiffs say, even if such a waiver were possible, it has not occurred in this instance.

Plaintiffs' position is supported by Pryner v. Tractor Supply Co., 109 F.3d 354, 363 (7th Cir. 1997). In that case, the Seventh Circuit held that a union could not consent to arbitration of federal statutory anti-discrimination claims on behalf of its individual members by signing a CBA. Id.

The defendant, however, contends that Supreme Court's decision in Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 82 (1998) has thrown into question the continuing validity of the Pryner holding. The plaintiff in that case was a longshoreman whose employment was covered by a CBA. Id. at 72. The CBA had a broad arbitration provision which called for arbitration of all matters contained in the contract. Id. at 73. Among the provisions in the contract was one stating that the parties intended that the CBA would not violate any provision of state or federal law. Id. at 81. When the plaintiff filed an ADA claim against his employer in federal court, the employer argued that these two CBA provisions constituted a waiver of the union member's right to seek relief in federal court for alleged violations of statutory anti-discrimination laws. Id.

The Supreme Court disagreed. In its view, "the right to a federal judicial forum is of sufficient importance to be protected against less-than explicit union waiver in a CBA." Id. at 80. Therefore, the Court reasoned, any such waiver would have to be "clear and unmistakable." Id. Because the arbitration provision was overly broad and the CBA did not expressly incorporate ADA requirements, the Court ruled that the CBA in question was not clear and unmistakable. Id. at 81.

4

The _Wright_ Court made clear that only issue it decided was that the CBA before it did not waive the union member's right to a federal forum for ADA claims. _Id._ at 82 The Court did not, the opinion emphasized, decide whether any such waiver would be valid. _Id._ Thus, _Wright_ does not undermine the Seventh Circuit's holding in _Pryner_ that such waivers are unenforceable.

Even if _Wright_ did call the holding in _Pryner_ into question, it would not have advanced the defendant's cause, because the alleged waiver in the Colfax CBA is not "clear and unmistakable."[5] The Colfax CBA contains no express agreement that employees will submit all federal causes of action arising from their employment to arbitration.   There is only a broad provision, calling for arbitration, "[i]n the event of any disagreement or dispute in any Company, arising out of the application or interpretation of this contract." (Def.'s App. Mot. Summ. J., Catalano Dep. Ex. 1 ¶ 26.1.)

By its own terms, the Colfax CBA must therefore explicitly incorporate statutory anti-discrimination requirements in order to compel arbitration for a federal claim.  _Wright_, 525 U.S. at 80.  The defendant points to the anti-discrimination clause in the contract as evidence that the statutory requirements of the ADEA are incorporated in the CBA.

> The parties further affirm their mutual commitment to refrain from any employment discrimination because of age which is prohibited by law, and to cooperate affirmatively in the observance and implementation of any applicable governmental regulations relating to equal employment opportunity." Catalano Dep. Ex. 1 ¶ 4.1.

However, like a similar clause found in the CBA examined by the _Wright_ Court, this clause does not make compliance with the ADEA a contractual commitment.  Indeed, most courts

---

[5]Though the copy of the CBA submitted by the defense for our review appears to have expired before the alleged events leading to this action took place, both parties have submitted motions treating the CBA as still in effect and therefore this Court will recognize it as such. (_See_ Catalano Dep. Ex. 1; Def.'s Mot. Summ. J. at 5-6; Pls' Resp. Mot. Summ. J. at 26-28.)

addressing the issue agree that explicit mention or citation of the statute is a minimum requirement of Wright. See Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 9 (1st Cir. 1999); Rogers v. New York University, 220 F.3d 73, 76 (2d Cir. 2000); Brown v. ABF Freight Sys., Inc., 183 F.3d 319, 322 (4th Cir. 1999) ("There is a significant difference, and we believe a legally dispositive one, between an agreement not to commit discriminatory acts that are prohibited by law and an agreement to incorporate, in toto, the anti-discrimination statutes that prohibit those acts."); Bratten v. SSI Services, Inc., 185 F.3d 625, 631 (6th Cir. 1999).

The Colfax CBA contains no clear and unmistakable provision compelling employees to arbitrate anti-discrimination claims. Moreover, the Seventh Circuit has not yet ruled any such provision to be enforceable.[6] Therefore, the defendant's motion for summary judgment on grounds of lack of jurisdiction fails, and the merits of the ADEA claim must be examined.

**Merits of the ADEA Claim**

In order to prove a case of age discrimination under the ADEA, the plaintiffs must show they would not have been laid off "but for" the defendant's motive to discriminate against them based on age. O'Connor v. DePaul Univ., 123 F.3d 665, 669 (7th Cir. 1997). This can be achieved in two ways, "either through direct proof of discriminatory intent, or through indirect, burden-shifting method of proof first elaborated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472 (7th Cir. 1993).

---

[6]Defendant also asks us to consider the recent decision, Tice v. American Airlines, Inc., 288 F.3d 313 (7th Cir. 2002). However, as that case concerns issues of arbitration in the airline industry, we do not find it controls this case.

As direct evidence of discriminatory intent, he plaintiffs present two alleged comments from the president and senior vice president of Colfax Corp. which they argue prove the company made the decision to lay them off on the basis of age.[7] The first was made by Clanton to union representative Rick Catalano at a meeting on June 24, 1999, when he said the company wanted to train "young guys" to run the new equipment. The second was Clanton's September 22, 1999 remark to Cahill that Patten had said he " was going to get rid of everyone over fifty."[8] These comments rise to the level of direct evidence only if they "relate to the motivation of the decision maker responsible for the contested decision."

The defendant argues that Clanton was not a decision maker and therefore his comment is of no consequence and his remark concerning Patten's intent is inadmissible.[9] The plaintiffs point to Patten's testimony calling Clanton his "right-hand man," "in charge of operations of [the] company," as evidence that Clanton was in fact a decision maker. (Pl.'s Ex. C. at 28-29.) However, such a characterization does not necessarily establish Clanton as being involved in the specific decision to lay off Fowler and Cahill. More pertinent testimony comes from Clanton's own admission that he played a role in the decision to retain Ron Davenport after Wilhelm's list had been submitted. (Pls.' Ex. D at 42). Patten also says that "Fred [Clanton] and I made [the decision to retain Davenport]."

---

[7]Defendant denies both comments were ever made. (Def.'s Resp. Pl.'s Counter Stmt. Mat. Facts ¶¶ 3, 12). However, for the purposes of summary judgment we must examine the facts in the light most favorable to the non-moving party. Therefore, we will proceed as if both comments were in fact made, though the matter is disputed.

[8]Plaintiffs further assert that a comment made by Patten during his deposition, referring to "one of the young men' is evidence of discrimination. However, the plaintiff misconstrues the testimony, which refers to a 23-year-old man, and the Court does not consider the remark discriminatory.

[9]No one argues that Patten, as president of the company, was not a decision maker.

(Id. at 110.) It is fair, then, to say that Clanton had some input and influence in at least part of the layoff decisions, sufficient to make his statement regarding Patten's intention to get rid of everyone over fifty admissible under FED. R. EVID. 801(d)(2)(D).

However, Patten and Clanton delegated their decision making responsibility to Wilhelm in June 1999. Clanton told Wilhelm to choose two other pressmen to work with him on the web press. Other than adding Davenport to the list, Patten and Clanton followed Wilhelm's list in deciding whom to retain. Because there is no evidence that Wilhelm chose unfairly based on age or that Patten's intention to "get rid of everyone over fifty" or Clanton's to select "young guys" for the job were ever communicated to Wilhelm, these comments have little value as evidence of the decision maker's motivations. Therefore, Fowler, let go at age fifty-two, cannot prove a case of age discrimination based on direct evidence.

Fowler's case fails on indirect evidence as well. To succeed under the <u>McDonnell Douglas</u> burden-shifting method of proof, he must first establish a <u>prima facie</u> case of discrimination. <u>Gordon v. United Airlines, Inc.</u>, 246 F.3d 878, 885 (7th Cir. 2001). To establish a <u>prima facie</u> case, Fowler must show that he: (1) is a member of a protected class; (2) he was qualified for the job or was meeting Colfax Corp.'s legitimate expectations; (3) he suffered an adverse employment action; and (4) Colfax Corp. treated substantially younger employees more favorably. <u>See Hoffman v. Primedia Special Interest Publications</u>, 217 F.3d 522, 524 (7th Cir. 2000).

Neither side disputes that Fowler is in the protected age group, performed his job satisfactorily and suffered an adverse employment action. However, the fourth prong of the test presents a roadblock for Fowler. The only workers similarly situated to him in terms of training and salary were his fellow pressmen. Of the four pressmen who were retained, three were younger than him but none

8

substantially so. As the defense contends, "substantially younger" for ADEA purposes presumes an age gap of 10 years or more between the plaintiff and the favored employee. Cianci v. Pettibone, Corp., 152 F.3d 723, 728 (7th Cir. 1998); Fisher v. Wayne Dalton, Corp., 139 F.3d 1137, 1141 (7th Cir. 1998); Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997). The plaintiffs counter that under Hartley, when the age difference is less than ten years, the plaintiff can overcome this presumption with evidence that the employer considered his age to be important. 124 F.3d at 893.

The youngest retained pressman was forty-eight years old, about four and a half years younger than Fowler. This age gap is presumptively insubstantial. The only evidence Fowler produces to overcome this presumption are the statements by Clanton that Patten was going to get rid of everyone over fifty and the company wanted to train young guys for the new equipment. Again, because the decision not to retain Fowler was made by Wilhelm, and because Patten's alleged biases were not communicated to Wilhelm, this evidence is not sufficient to establish that age was of any importance in the decision to let Fowler go. Failing the fourth prong, Fowler fails to present a triable case of age discrimination under the ADEA. Therefore, the defendant's motion for summary judgment on the claim asserted by Fowler is granted.

The situation is different in the case of Cahill, however. Before making his selections, Wilhelm was told not to consider Cahill because Cahill would be retiring soon. Therefore, the decision of whether or not to select Cahill was kept out of Wilhelm's hands. Clanton, by telling Wilhelm not to consider Cahill, became a decision maker, and Clanton's statements become relevant.

As direct evidence, the comments do not amount to an admission of guilt by Colfax Corp. However, in discrimination cases, all that is required to survive summary judgment " is evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because

the latter was a member of a protected class." <u>Troupe v. May Dept. Stores, Co.</u>, 20 F.3d 734, 737 (7th Cir. 1994). Patten and Clanton's statements create an inference that Colfax Corp. was motivated to lay off Cahill because of his age. Cahill was over fifty when he was laid off, and was in fact the oldest of the pressmen. When Clanton said Colfax Corp. was seeking to train "young guys" for the new equipment, a jury could reasonably infer that laying off the oldest member of the pressroom staff was a good start. Thus, plaintiff Cahill survives summary judgment, and the defendant's motion as it pertains to Cahill is denied.

## Damages

The defendant further argues that should Cahill survive summary judgment, Colfax Corp. is nonetheless entitled to judgment as a matter of law on the issue of Cahill's damages. The defendant claims Cahill did not actively attempt to mitigate his damages, conducting an unenthusiastic job hunt, and turning down a job offer substantially equivalent to the one he had at Colfax Corp.

However, we agree with the plaintiff that the issue raised by the defendant is best left to a jury, as it involves questions of reasonableness and credibility. <u>See</u> <u>Smith v. Great Am. Restaurants, Inc.</u>, 969 F.2d 430, 438 (7th Cir. 1992); <u>Matlock v. Barnes</u>, 932 F.2d 658, 667 (7th Cir. 1991); <u>Smith v. Rowe</u>, 761 F.2d 360, 367 (7th Cir. 1985). The burden is on Colfax Corp. to prove that Cahill did not fulfill his duty to exercise reasonable diligence in attempting to mitigate his damages through finding comparable work. <u>Great Am.</u>, 969 F.2d at 438. However, the defendant has not presented sufficient evidence to show that the job Cahill turned down with Bruce Offset was in fact comparable to the position he held at Colfax Corp. Furthermore, it is for a jury to decide whether Cahill's job search,

consisting of sending out resumes with no cover letters and making follow-up phone calls, was reasonable. Therefore, the defendant is not entitled to summary judgment on the issue of damages.[10]

## Cahill's Cross Motion for Summary Judgment

Cahill has filed a cross motion for summary judgment, claiming that by defendant's own admission, the decision to lay off Cahill was predicated on the belief that he would retire soon. The plaintiff claims this belief was based on the fact that Cahill was turning sixty in June 1999, that most pressmen retired at age sixty because they could receive full retirement benefits, and therefore the decision was based directly on Cahill's age. The defendant counters that Cahill told Adrienne Poole, Colfax Corp.'s human resources manager, that he would be retiring at the end of the year, and that Patten confirmed this information with Cahill. (Def.'s Stmt. Facts ¶¶ 21-24.) Patten informed Cahill that on that basis he would not be considering him for the new web press, and Cahill said that was okay. (Id. ¶ 24.) Defendant further argues that in a reduction in force, an employer may legitimately choose to lay off workers who are planning to leave, as this makes good business sense. Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000).

We agree with the defendant. Viewed favorably to Colfax Corp., the record suggests that Patten believed Cahill would retire shortly. This belief was based upon a variety of factors, most notably Cahill's statement to Patten that he would retire. (See Def.'s Stmt. Facts ¶¶ 21-30.) Under

---

[10]The defendant also argues that Cahill cannot claim compensatory damages under the ADEA, citing the ruling in Pfeiffer v. Essex Wire Corp., 682 F.2d 684, 687-88 (7th Cir. 1982). However, that ruling found that pain and suffering and punitive damages are not available under the ADEA, but does not speak to general compensatory damage claims. Furthermore, the 7th Circuit has upheld awards for compensatory damages since the 1982 case. See, e.g., Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771 (7th Cir. 2001); Molnar v. United Technologies Otis Elevator, 37 F.3d 335 (7th Cir. 1994).

Thorn, Colfax Corp. therefore could have made the sound business choice to retain men to run the new press who would stay with the company for more than a few months. A reasonable jury could decide that Colfax Corp. did not want to invest in training Cahill for the web press after he told the president of the company that he was planning to leave.

Furthermore, retirement is not always synonymous with age. See Halloway v. Milwaukee County, 180 F.3d 820, 825 (7th Cir. 1999) ("[R]equests that an employee retire are not necessarily a reference to the employee's age.") Simply because age played a role – but by no means an exclusive role – in creating an expectation that Cahill would retire does not mean that age was the key factor in the decision to lay him off. The plaintiff is therefore not entitled to judgment as a matter of law and the cross motion for summary judgment is denied.

### Conclusion

For the reasons set forth above, there is no genuine issue of material fact on any of the ADEA claims Fowler asserts against Colfax Envelope, Corp. Defendant's motion for summary judgment against Fowler is therefore granted. A genuine issue of material fact does exist on the claims Cahill asserts against Colfax Corp. Defendant's motion for summary judgment against Cahill and Cahill's cross motion for summary judgment are, therefore, denied.

**ENTER:**

**UNITED STATES SENIOR DISTRICT JUDGE**

DATED: _July 19, 2002_

12